**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MASSACHUSETTS**

Bankruptcy Petition **No. 11-12541**                                  Boston Division

| | | |
|---|---|---|
| **IN RE:** | ) | **Emergency or Expedited** |
| DFM Industries, Inc. | ) | |
| 14 Kendrick Street | ) | **MOTION FOR RELIEF FROM 11 USC, §362,** |
| Wrentham, MA 02093, | ) | **AUTOMATIC STAY,** |
| | ) | *OR ALTERNATIVELY A* |
| Debtor. | ) | **DECLARATION THAT THE §362 DOES NOT APPLY** |
| | ) | |

Now come the following individuals –all creditors to the instant Petition,

1. Ibrahim Adamu;
2. Casey Chasarik;
3. James Driscoll;
4. Charles Graham;
5. John Hayes;
6. Thomas Hinkley;
7. Craig Justin;
8. Kevin Kelly;
9. Michael McEachern;
10. James Mundell;
11. Nick Powers;
12. Derek Reid;
13. Laurence Sullivan;
14. Bryant Tyo; and
15. Matt Willim

(collectively "Movants") and each hereby moves this Court to provide each a relief from the automatic stay rule or a declaration that the stay, i.e., 11 USC, §362, does not apply.

In support of this EMERGENCY Motion, Movants further state as follows:

1. Movants sought but were, at the time this Motion was filed, unable to obtain the

assent of the Debtor or Trustee.  Both were provided the Motion only hours before it

was filed, however.  The urgency exists in that Movants have rights beyond the

Debtor's estate that require filing action and indeed suit, some within days as shown

below.

2. Each of the Movants is a former employee of DFM Industries, Inc. ("Debtor"), who
   performed labor on projects governed by the General Laws of Massachusetts, at
   Chapter 149, §27 (Prevailing Wage Law). The Prevailing Wage and other statutes
   allow any such individual to pursue for "himself and for others similarly situated, a
   civil action for injunctive relief, for any damages incurred, and for any lost wages and
   other benefits." GL c 149, §§27 and 150.

3. Each Movant and "others similarly situated" remain unpaid for labor performed on
   such public projects, each in varying amounts. Not all Movants worked on the same
   projects or for the same hours at the same wages; that is, each has different damages
   owed.

4. Debtor has admitted to the Massachusetts Office of the Attorney General, that Debtor
   failed to pay each Movant. Exhibit A (AG's Release). Debtor led Movants to believe
   that Debtor had paid amounts to a pension plan, but Movants now have reasonable
   apprehension that such was not the case. (Movants are exploring facts to ferret out
   the facts, and may file an adversary proceeding and other actions under the
   Bankruptcy Procedure Rules, when and if appropriate. Movants do not intend
   anything in this Motion to be deemed a waiver of claims any of them might make *via*
   this Court) Indeed, the Trustee in this Petition has pending a motion for an attorney
   to help it investigate potential fraud. See Docket at Doc 14, Trustee's Application for
   Authority to Employ … Counsel.

5. Each Movant has at least one action and potential others to recover such wage non-
   payments from various and sundry statutory and other rights, e.g.,

    a.  GL c 149, §28 (actions against City or Town);

    b.  GL c. 149, §29 (actions against statutory surety bond);

    c.  GL c. 149, §§27 and 150 (Personal Liability of president of corporation);

    d.  Among other potential actions, e.g., which might include the Employee Retirement Income Security Act ("ERISA"), though no Movant concedes ERISA is applicable to any debts owed whatsoever; and contract third-party beneficiaries of public works contracts.

6.  Movants seek to secure all, and at least some part, of their wage non-payments.  Such actions will highly likely require documents and information only Debtor possesses and might require inquiry, e.g., depositions and other examinations, of the Debtor. Further, the Debtor is a corporate entity owned and operated by Messrs Glen and Dana Pisani, the President and Secretary/Director. Exhibit B (Corporate Records). Messrs Pisani are personally liable for the debts owed to each Movant. GL c. 149, §§27 and 150; Tomei v. Corix Utilities (US) Inc., 2009 WL 2982775 (D. Mass. 2009)(finding personal liability for violations of prevailing wage statute); Goodrow v. Lane Bryant, Inc., 432 Mass. 165 (2000);.Opinion of the Justices, 163 Mass. 589 (1895)(finding constitutional personal liability for wage act violations).

7.  The AG's Office has sent Movants forms to fill out that require Movants to name corporate-Debtor as employer and provide places Debtor employed Movants, among other information. GL c. 149, §§27 and 150.

8.  To avoid even the appearance of impropriety and other reasons, Movants seek the declaration that the automatic stay does not apply or relief from the stay so that they may pursue any and all claims they may have to recover damages owed by others resulting from the Debtor's failure to pay for labor performed, and other amounts

arising therefrom.  Some of these actions have extremely short statutes of limitations, e.g., GL c 149, §28 requires two filings within 30 and 60 days; GL 149, §29 within 65 days and less than one year from the date the Motion was filed.  Delay is fatal.

9.  An actual controversy exists.  Undersigned Counsel has already received at least one telephone call from a third-party's attorney in which such attorney raised an issue of undersigned Counsel's attempts to seek payment from third-parties to recover wages and other damages owed to Movants –even from sources other than the Debtor, more specifically in accord with GL c. 149, §§28 and 29.[1]  A decision on this Motion would resolve that and other such disputes which will highly likely arise again. Given the fifteen individuals named as Movants and Counsel's initial analysis of each's claim, a likelihood exists that at least six separate and distinct actions could be filed in at least as many state or federal courts on the surety bond (GL c. 149, §29) – much depending on the amenability of the surety.  At least four additional suits will be filed under GL c. 149, §28 –again depending on whether parties decide to settle the claim within the next few days to avoid suit before the 60-day statute of limitations.  At least a dozen attorneys will review defenses to payments.

10.  Notwithstanding the plethora of authority cited below, the relief sought by Movants *via* this Motion avoids such costly issues that might otherwise come before this Court and any one of which would increase the costs for all parties in interest in the instant Petition.  Such issues could tax this Court's resources, the scarce resources of the

---

[1] Counsel will disclose the name of that Attorney and provide a sworn affidavit if the Court deems it necessary or desirable.  Counsel simply seeks polite protocol by avoiding lawyer-versus-lawyer disputes about such matters, and counsel for Movants hopes this Court deems such details superfluous to the matters raised herein, i.e., whether stay applies, and if so, whether relief should be granted.

Debtor, and unfairly will increase costs to the Movants.  Granting the relief requested

would avoid such unnecessary battles.

11. Debtor is solely in possession and control of most documents Movants need to prove

their claims in most of the actions mentioned above.  Accordingly, Movants must

seek discovery from the Debtor, including discovery beyond what some might argue

exceeds the scope of a Fed. Bnkrpt. Proc. Rule 2004 examination.

12. To be clear:  Movants believe that in all instances Movants acted lawfully, and they

may act in accord with GL c. 149, §§28 and 29 and pursue other personal liability

claims without the relief sought here, i.e., §362 does not apply.  But, given that

Debtor has important information; that various claims and forms require Debtor's

name and other information; added to the fact that an issue has already been raised

regarding the propriety of Movants' securing debts owed by third-parities without a

request for relief from §362, relief *via* the instant Motion seems a prudent approach to

avoid litigation on the issue before this and other courts.

13. Movants urgently need to pay their bills, secure their wages and other amounts owed

by third-parties and must use Debtor's name and seek information only Debtor has to

prove such claims.

**Law & Argument:**

Clearly, Movants may proceed in the actions stated herein  without violating the

automatic stay. FDIC v. Torrefaccion Café Cialitos, Inc., 62 F.3d 439, 443-45 (1st Cir.

1995)(reciting that "§362 automatically stays only suits filed against debtors and not suits against

the debtor's co-debtors, guarantors, or sureties."). Also on point is <u>In re Lockard</u>, 884 F2d 1171,

1177-78 (9th Cir 1989).  Indeed, the court in <u>In re Lockard</u> discussed that:

> "… the "overwhelming weight of authority" under both the Bankruptcy Act and Code
> holds that a contractor has no property interest in a surety bond issued by a third-party to
> guarantee the contractor's performance on its commercial or personal services contracts.
> In addition to <u>In re Buna</u>, *see, e.g.,* In re Mansfield Tire and Rubber Co., 660 F.2d 1108,
> 1115 (6th Cir.1981)(debtor could not claim any legal or equitable interest in surety
> bonds); <u>Globe Construction Co. v. Oklahoma City Housing Authority</u>, 571 F.2d 1140,
> 1143 (10th Cir.) (bankruptcy court has no jurisdiction to enjoin in personam action
> against guarantor of bonds secured by mortgage upon property owned by the debtor),
> *cert. denied,* 439 U.S. 835, 99 S.Ct. 117, 58 L.Ed.2d 131 (1978); <u>In re Stanndco</u>
> <u>Developers, Inc.,</u> 534 F.2d 1050, 1052-53 (2d Cir.1976) (district court in reorganization
> proceedings had no jurisdiction to enjoin state court action against surety on mechanic's
> lien release bond); <u>In re Fintel</u>, 10 B.R. 50, 51 (Bankr.D.Ore.1981<u>)</u> (<u>section 362</u> does not
> stay action against corporate surety bond, which was provided by a debtor as a condition
> of obtaining Oregon contractor's license, because bond was not "property of the estate");
> <u>In re McLean Trucking Co.,</u> 74 B.R. 820, 826 (W.D.N.C.1987) (automatic stay
> inapplicable to action against surety because bond is not "property of the estate"). See
> also <u>In re Bialac</u>, 712 F.2d 426, 431 (9th Cir.1983)(automatic stay does not preclude
> efforts to collect from a bankrupt's guarantors or from their property). <u>Id.</u>, at 1177.
>
> ***
>
> "FN11. We note that a thoughtful discussion of surety bonds, and the other bankruptcy
> law issues presented by this appeal, can be found in a recent bankruptcy court decision,
> <u>McLean Trucking</u>, 74 B.R. 820, 826-28 (W.D.N.C.1987).
>
>> As the <u>McLean</u> court observed, the inquiry under <u>11 U.S.C. § 541</u> should begin
>> with the question whether *state* law has invested the debtor with any legal or
>> equitable interests in property as of the commencement of the case. *Id.* (citing
>> <u>Butner v. United States</u>, 440 US 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136
>> (1979))." <u>Id.</u>, at 1177

Also the court in <u>In re Dunbar</u>, 235 BR 465 (9th Cir 1999) recited that:

> "The debtors assert that the Martins' state court action against Surety Company of the
> Pacific to collect from Robert Dunbar's contractor's license bond violates the automatic
> stay and, therefore, should be enjoined." (denying motion to injunctive relief against
> pursuing bond action). <u>In re Dunbar</u>, at 475.

"The contractor's license bond at issue is executed in favor of the State of California for the benefit of, among others, homeowners who are harmed by a contractor's violation of certain California laws governing contractors. [citation omitted]. The Ninth Circuit Court of Appeals has held that a surety bond issued by a third party to guaranty a contractor's performance of its contracts is not property of the estate. In re Lockard, 884 F.2d 1171, 1177-78 (9th Cir.1989). The debtors attempt to distinguish Lockard on the basis that it allegedly involved a performance bond required by law that guaranteed workmanship rather than a license bond required by law that provided compensation for violations of state law. The rationale of Lockard is that, when a third party posts a bond to guaranty a debtor's obligations, the bond is for the benefit of the third party beneficiaries of the bond, and is not property of the debtor or its estate. It does not make any difference whether the prerequisite to the third party's collection from the bond is breach of a contract or violation of a state law. The contractor's bond is therefore not property of the estate." Id., at 475-76.

Here, like In re Dunbar, the GL c. 149, §§28 and 29 claims as well as the personal liability claims arise from statute.  Indeed, statutory bonds issued for public construction are executed in favor of each public awarding authority and laborers like Movants, not Debtor as to Movants claims (though in candor Debtor might have claims on such bond, too –Movants are not in a position at this time to discern such).  More recently, the Court of Appeals for the Ninth Circuit recited consistency with the overwhelming weight of authority stated above and held that the stay:

> … 'does not protect non-debtor parties or their property. Thus, section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor.' [citation omitted].  We have refused to extend the automatic stay to enjoin claims against a contractor-debtor's surety, even though a surety bond guarantees the contractor-debtor's performance."
>> Boucher *et al* v. Shaw, 572 F.3d 1087, 1092 (9th Cir. 2009)(allowing FLSA wage suit for personally liability against debtor corporation to recover wage non-payments, and ruling such "even though allowing a claim against the surety would trigger the surety's right to recourse against the debtor").

In short, independent third-party obligations, like surety bonds, e.g., are not the property of the estate. Id.  Here, as in Boucher v. Shaw, Movants seek actions, among others, against owners of the Debtor-corporation which arises from statutory obligations that such corporate

directors and presidents assume when they hire employees in the Commonwealth of

Massachusetts.  Here, like the cases cited above, there is no absolute requirement that the Debtor

be indemnified by action taken against third-parties.

If any indemnification exists it is completely a contractual option, not legal mandate or

automatic requirement against the estate of Debtor.  That is, the actions are products of statutes

creating rights for such persons as Movants to be secure in providing performing labor

independent of Debtor and liability of Debtor to other third-parties.  Such third-parties take on

the risk of Debtor's default and bankruptcy, not Movants.  "A general principle of bankruptcy

law is that the liability of a surety [and co-debtors or guarantors] is not affected by the discharge

of the principal debtor." In re Sinking of M/V Ukola, 806 F.2d 1, 3 (1st Cir. 1986).

Further, and as stated by the Court in Boucher v. Shaw, the "individual managers

generally are not liable for the debts of the debtor, and even if they were, the plaintiff's

[Movants'] statutory claim against the individual managers is unrelated to any of the [Debtor's]

debts." Boucher v. Shaw, at 1093.

Indeed, Movants had zero input into the relationships, if any, between Debtor and third-

parties against whom Movants may seek statutory rights for direct payment and other damages

such statutes allow.  Moreover, Debtor's estate is not entitled to any money from these third-

party potential claims Movants will pursue under GL c. 149, §§28 and 29 or from the personal

liability of President of the Debtor-corporation.  Currently, Movants, *via* such suits and by this

Motion, do not seek the property of Debtor's estate, but the property of third-parties, i.e., cities

and towns, surety bonds, and personal liability *via* responsible officers of the Debtor-corporate

body.  Movants, of course, reserve claims against the estate that might be made via this Court

and the Bankruptcy Procedure Rules.

Worse, Movants may lack adequate protection to recover even parts of their wages if this Court deems §362 applies and does not grant the relief requested herein.  Given that Debtor lacks any equity in the bonds or other actions contemplated in this Motion by Movants, relief from stay is justified in accord with 11 USC, §362(d)(1) and (2) of the Code. Accordingly, the automatic stay does not apply.

**FOR ALL THE REASONS STATED ABOVE**, Movants request that this Court enter an order either by way of the attached proposed ORDER, see Exhibit C, or:

(1) Declaring that relief from the automatic stay is not required for Movants to pursue their GL c. 149, §§27and 150 (personal liability claims) and §§28 and 29 claims against third-party cities and towns and surety bonds, any ERISA, if any, claims and third-party beneficiary claims against third-parties not the Debtor; or

(2) Granting Movants relief from the automatic stay to pursue such claims identified herein this Motion; or

(3) Provide any other relief this Court in its wisdom deems just.

Accordingly, Movants respectfully pray that this Motion be allowed.

> Respectfully submitted by,
> Movants/Creditors named above
> By and through their attorney
>
>          /s/ Mickey Long
> Mickey Long, BBO#634388
> PO Box E-1
> 193 Old Colony Ave.
> Boston, MA 02127
> Tel (617) 269-0229
> Fax  617.269.0567
> mickeylong@gis.net

April 11, 2011

CERTIFICATE OF SERVICE

I, Mickey long, hereby declare that on April 11, 2011 a copy of this document was electronically filed with the U.S. Bankruptcy Court for the District of Massachusetts.

   /s/ Mickey Long
Mickey Long
